## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA SHIRLEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-00278 |
| v. | ) ) | Honorable Elaine E. Bucklo |
| REYNOLDS CONSUMER PRODUCTS, LLC, | ) ) ) | |
| Defendants. | ) | |

**REYNOLDS CONSUMER PRODUCTS, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Reynolds Consumer Products, LLC's ("Reynolds") has moved to transfer this case to the Western District of Arkansas because key witnesses and sources of proof are in that District. If the Court transfers the case, this Motion will be decided by the transferee court. If the case is not transferred, the Court should dismiss Veronica Shirley's ("Plaintiff") claims.

This case is about Reynolds Wrap aluminum foil. The raw materials used to make the foil are procured, blended, and processed at a Reynolds manufacturing facility in Arkansas. The foil is then pressed, spooled, cut and boxed at a Reynolds facility in Kentucky, and the box includes a label stating, "Foil Made in U.S.A." Plaintiff alleges this statement is somehow deceptive because some of the raw materials used to make the foil allegedly are imported. (Compl., ¶¶ 17-21.) Based on this allegation, Plaintiff asserts nine claims, including under the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") (Count 1) and other states' consumer fraud acts (Count 2), as well as claims for breach of contract (Count 3), express warranty (Count 4), implied warranty (Count 5), violation of the Magnuson Moss Warranty Act ("MMWA") (Count 6), negligent misrepresentation (Count 7), fraud (Count 8), and unjust enrichment (Count 9).[1]

All claims should be dismissed. *First*, the ICFA claim fails because Plaintiff does not allege facts plausibly showing actual damages, and this claim duplicates her contract claim. *Second*, Plaintiff lacks standing to assert claims under the laws of any state other than Illinois because she was not injured in those other states. *Third*, the warranty claims fail because Plaintiff failed to provide the required pre-suit notice. *Fourth*, the warranty and contract claims fail because Plaintiff did not contract with and is not in privity with Reynolds. *Fifth*, the negligent misrepresentation claim is barred by the economic loss doctrine. *Sixth*, Plaintiff does not allege facts showing

---

[1] Although unnumbered in the complaint, Reynolds numbers Plaintiff's claims for ease of reference.

scienter, and thus her fraud claim fails. *Seventh*, the unjust enrichment claim duplicates Plaintiff's other claims and thus fails for the same reasons. And finally, Plaintiff does not allege facts plausibly showing any imminent or substantial future injury and thus lacks standing to seek injunctive relief.

## PLAINTIFF'S ALLEGATIONS

Reynolds makes aluminum foil at facilities in Arkansas and Kentucky, and the foil is sold to consumers by third-party retailers. (Compl., ¶¶ 1, 42.) Reynolds Wrap packaging states: "Foil Made in U.S.A." (*Id.*, ¶ 1.) Plaintiff alleges she bought Reynolds Wrap at Walmart locations, expecting it was made in the U.S. (*Id.*, ¶¶ 43-44.) She does not allege that Reynolds Wrap is *not* made in the U.S. but alleges that the "Foil Made in U.S.A." claim supposedly is misleading because the foil allegedly is made with imported raw materials. (*Id.*, ¶¶ 8-16.) Plaintiff alleges she paid a "price premium compared to other similar products" (*id.*, ¶ 27) but does not allege the specific price she paid, what other aluminum foil she considered buying, or what the price should have been if the box did not state, "Foil Made in U.S.A."

## LEGAL STANDARD

This Motion is based on Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. Standing is addressed under Rule 12(b)(1). *See Hinrichs v. Speaker of the House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007). Plaintiff must allege facts showing: (i) concrete injury in fact; (ii) caused by the challenged conduct; and (iii) that a favorable decision will likely redress the injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Under Rule 12(b)(6), Plaintiff must allege facts that "raise a right to relief above the speculative level" and are sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570

(2007). Conclusory allegations are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And claims sounding in fraud, like the ICFA claim, must satisfy the particularity requirements of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

## ARGUMENT

### A. Plaintiff Fails to State a Claim Under ICFA (Count 1).

Plaintiff's ICFA claim fails for two reasons: (1) she has not adequately alleged actual damages; and (2) the ICFA claim is merely a restated claim for breach of contract.

#### 1. Plaintiff Has Failed to Allege Actual Damages.

To state an ICFA claim, "plaintiff must plead and prove actual damages, which is to say 'actual pecuniary loss.'" *Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041 (N.D. Ill. 2017) ("*Sabo II*") (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). Plaintiff's allegations must be nonspeculative and have a "factual foundation to moor [the plaintiff's] subjective estimation of the products' worth." *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) ("*Sabo I*").

In *Sabo II*, for example, the court dismissed an ICFA claim based on a "made in the USA" claim because plaintiff failed to allege facts plausibly showing damage. There, plaintiff alleged a pet food manufacturer deceptively labeled its products with a "made in the USA" label because the products allegedly contained foreign-source vitamins. *See Sabo II*, 282 F. Supp. 3d at 1041. Plaintiff alleged that, had he known the truth, he "would not have purchased the dog food at the price he paid." *Id.* at 1042. The court, however, held that this allegation could not support an inference of actual damages because plaintiff did not allege "the price of comparable products not labeled 'Made in USA' … or any other measurable criteria for comparing the position plaintiff and the class would have been in absent the alleged fraud with the position they were in as a result

3

of their reliance on defendant's 'Made in USA' representation." *Id.* "Such a comparison … is *required* to establish actual damages under ICFA." *Id.* (emphasis added).

Although Plaintiff alleges that Reynolds Wrap is sold "for no less than $4.99 per 75 square feet," she does not allege facts connecting that price to her conclusory allegation that she paid "a higher price than it would otherwise be sold for, absent the misleading representations and omissions." (Compl., ¶ 27.) Plaintiff does not allege what she paid. She does not allege facts providing the required comparison between what she paid and what she would have paid without the "Foil Made in U.S.A." claim. And thus, as in *Sabo I and II*, the ICFA claim should be dismissed. *See Sabo II*, 282 F. Supp. 3d at 1043 (when "the complaint tells us nothing about the price of similar pet food products available on the market, the inference that plaintiff spent more on defendants' products because he believed they were American made than he would have spent otherwise requires more than unsubstantiated allegations about the products' 'worth' and the statement that plaintiff would not have bought the products … in the absence of the alleged fraud.").[2]

### 2. The ICFA Claim Also Fails Because it is a Restated Breach of Contract Claim.

An "action for breach of express warranty is an action *ex contractu*." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 913 (N.D. Ill. 2013). An ICFA claim, however, must allege "something more than a garden-variety breach of contract." *Greenberger v. GEICO Gen. Ins.*, 631 F.3d 392, 399 (7th Cir. 2011). "When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* A plaintiff must allege "more than restatements of the claimed breach of

---

[2] This failure also requires dismissal of the claims asserted under other states' consumer protection statutes. *See Sabo I*, 250 F. Supp. 3d at 337 (failure to allege actual damages warranted dismissal of ICFA claim and any claims under "similar consumer protection statutes in other states").

4

contract, albeit using the language of fraud." *Id.* at 399. Thus, ICFA claims fail when "the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged." *Id.*

Plaintiff's ICFA claim restates her warranty and contract claims and thus fails. She alleges that "Foil Made in U.S.A." is misleading because the product was made with imported raw materials. (Compl., ¶¶ 66-68.) Counts 3 (breach of contract) and 4 (express warranty) are based on the same representation. (*See id.*, ¶¶ 76, 82.) Courts have dismissed similar ICFA claims that simply rehash warranty and contract claims. *See*, *e.g.*, *Reid*, 964 F. Supp. 2d at 913-14 & n.9; *Parrott v. Fam. Dollar, Inc.*, 2020 WL 1888927, at *3 (N.D. Ill. Apr. 16, 2020). As in these cases, Plaintiff alleges no purported deception aside from the "Foil Made in U.S.A." claim. Thus, the ICFA and contract claims "rest on the same factual foundation," *Greenberger*, 631 F.3d at 399, and the ICFA claim should be dismissed.

**B.      Plaintiff Lacks Standing to Assert Any Claim Under the Law of Any State Other Than Illinois.**

Plaintiff must have standing to assert each of her claims. *See Lujan*, 504 U.S. at 560–61. Plaintiff alleges she resides and suffered injury in Illinois but purports to assert consumer fraud and other statutory and common law claims on behalf of individuals in eleven other states. (*See* Compl., ¶ 57.) Yet Plaintiff was not injured in these other states and cannot acquire standing by piggybacking on the purported injuries of unnamed class members. *See Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action."). Thus, the Court should dismiss Plaintiff's claims based on the laws of other states, including Counts 2 (State Consumer Fraud Acts), 4 (Express Warranty), 5 (Implied Warranty), 7 (Negligent Misrepresentation), 8 (Fraud), and 9 (Unjust Enrichment). *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 731-35 (N.D. Ill. 2015) (agreeing that there should be a named

representative from "at least some, if not all" states to show standing); *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 922 (N.D. Ill. 2012) (finding that standing issues are appropriately considered before class certification).[3]

### C. The Warranty Claims Fail Because Plaintiff Does Not Allege Pre-Suit Notice (Counts 4, 5, 6).

Plaintiff's warranty claims fail because she did satisfy her pre-suit notice obligation. *See Rudy v. Fam. Dollar Stores, Inc.*, 2022 WL 345081, at *6 (N.D. Ill. Feb. 4, 2022) ("Buyers seeking to sue for breach of express or implied warranties must first notify the seller of its breach."). In Illinois, the purpose of pre-suit notice is to "encourage parties to resolve the dispute short of litigation." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). "The notice requirement serves to provide … an opportunity to cure a defect and minimize damages, protect his ability to investigate a breach and gather evidence, and to encourage negotiation and settlement." *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998) (citations omitted).

Plaintiff cannot satisfy this requirement by suing. *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022) (dismissing warranty claims for failure to provide pre-suit notice when notice allegedly provided by filing of suit); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *5 (N.D. Ill. Apr. 8, 2022) (same); *see Rudy*, 2022 WL 345081, at *7

---

[3] *Accord In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *7-8 (N.D. Ill. Aug. 23, 2013) (dismissing for lack of standing claims based on consumer unfair competition statutes in states where plaintiffs did not reside or purchase the product at issue); *Muir v. Nature's Bounty, Inc.*, 2017 WL 4310650, at *9 (N.D. Ill. Sept. 28, 2017) (dismissing multi-state class allegations for lack of standing); *Catlin v. Hanser*, 2011 WL 1002736, at *8 (S.D. Ind. Mar. 17, 2011) (dismissing claims under 33 state statutes in states where plaintiff failed to allege an injury); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) (similar); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015) (similar); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) (similar).

(purpose of pre-suit notice "would be eviscerated if a party could satisfy the notice requirement by filing suit"). Plaintiff also cannot satisfy this requirement by alleging that Reynolds "received consumer complaints." *Chiappetta*, 2022 WL 602505, at *6 ("At most, this allegation suggests that Kellogg has 'generalized knowledge' of the alleged defect, which does not suffice under Illinois law.") (citing *Rudy*, 2022 WL 345081, at *7 n.4). And because the MMWA claim is "contingent on Plaintiff having a viable state law warranty claim," the failure to provide pre-suit notice means an MMWA claim also fails. *See O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) (dismissing MMWA claim when plaintiff failed to state warranty claim due to failure to provide pre-suit notice).

Ignoring these authorities, Plaintiff alleges that she provided notice (i) through the filing of the suit against Reynolds; or (ii) because Reynolds "received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums." (Compl., ¶¶ 89, 90.) As shown, these allegations do not and cannot show pre-suit notice. Thus, her warranty and MMWA claims fail. *See O'Connor*, 477 F. Supp. 3d at 717 ("It is now impossible, of course, for [Plaintiff] to provide pre-suit notice of the alleged breach of warranty to Ford'; he filed suit in 2019, 'and cannot now unring that bell.") (alternation in original).

### D. Even if Plaintiff Had Provided Notice, the Warranty Claims Still Fail.

Plaintiff's warranty claims fail for additional reasons. First, all of the warranty claims fail because Plaintiff has not alleged that she entered into a contract with Reynolds when she bought the Reynolds Wrap. Second, the implied warranty claim fails because Plaintiff has not alleged that the Reynolds Wrap was not merchantable or fit for her particular purpose. Third, the MMWA claim fails because Plaintiff has failed to allege a written warranty or that she provided Reynolds a reasonable opportunity to cure.

7

1. **The Warranty Claims Fail for Lack of Privity.**

Plaintiff's warranty claims (Counts 4, 5, 6) fail because she does not and cannot allege privity, which is required for each claim. *See Kmak v. Sorin Grp. Deutschland GmbH*, 2017 WL 8199974, at *5 (N.D. Ill. Dec. 12, 2017) (privity required for express warranty claim); *Quitno v. Gen. Motors, LLC*, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020) (privity required for implied warranty claim); *Kutzler v. Thor Indus., Inc.*, 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003) (privity required for MMWA claim). Plaintiff alleges she bought Reynolds Wrap from Walmart, not Reynolds. (Compl., ¶ 43.) Thus, she cannot show privity, and her warranty claims should be dismissed.

2. **The Implied Warranty Claim Fails Because Plaintiff Does Not Allege a Breach (Count 5).**

Plaintiff bases her implied warranty claim on two theories: breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. (Compl., ¶¶ 79-94.) Both theories fail.

*Merchantability.* Plaintiff fails to allege non-conclusory facts showing that the Reynolds Wrap foil she bought was unmerchantable. *See Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (stating elements for merchantability claim). "To be merchantable, the goods must be, among other things, fit for the ordinary purpose for which the goods are used." 810 ILCS 5/2–314. Plaintiff alleges that "[t]he Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label." (Compl., ¶ 92.) Other than this conclusory allegation reciting the elements of a merchantability claim, which should be disregarded, Plaintiff does not allege facts showing how the foil she bought was not "fit for the ordinary purpose for which the goods are used" or otherwise

8

breached the implied warranty. *See* 810 ILCS 5/2-314. Thus, her merchantability claim fails. *See Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 726 (N.D. Ill. 2021) (dismissing implied warranty claim when plaintiff failed to allege the ordinary purpose for the product); *Indus. Hard Chrome v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999) (same).

***Fit for a Particular Purpose.*** "[T]o state a claim for a breach of an implied warranty of fitness for a particular purpose under Illinois law, a plaintiff must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Kmak*, 2017 WL 8199974, at *6–7 (quotations omitted). "In other words, no warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product." *Id.* (quotations and alteration omitted).

Aside from her allegation that "Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff" (Compl., ¶ 93), she does not allege what her particular purpose was, how it differed from the ordinary purposes of foil, or how Reynolds could have known *her* "particular purpose" when she bought the product from Walmart. *See CHS Acquisition Corp. v. Watson Coatings, Inc.*, 2018 WL 3970137, at *6 (N.D. Ill. Aug. 20, 2018) (implied warranty claim failed where plaintiff failed to plausibly allege that its "particular use of [defendant's] topping paint was distinct from topping paint's ordinary use"); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (dismissing implied warranty claim where plaintiff failed to allege the particular, non-ordinary use of the product). Thus, Plaintiff's "particular purpose" claim fails as well.

### 3. Plaintiff's MMWA Claim Because She Does Not Allege Facts Showing a Written Warranty (Count 6).

Under the MMWA, a "written warranty" means an affirmation or written promise that the materials or workmanship are defect free or will meet a specified level of performance over a specified time:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time …

15 U.S.C. § 2301(6). Plaintiff alleges that the "Foil Made in U.S.A." representation was "conveyed in writing and promised it would be defect-free …." (Compl., ¶ 82.) Thus, Plaintiff appears to base her MMWA claim on the theory that Reynolds promised that the foil would be defect free. (*See id.*)

But this allegation is implausible on its face. The phrase "Foil Made in U.S.A." says nothing about the foil being "defect free" or meeting "a specified level of performance over a specified period of time." *See In re Sears, Roebuck & Co.*, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (concluding that "Made in USA" was not a "written warranty" under the MMWA because it does not state that the product will be defect-free or will perform at a specified level over a specific time). Thus, this statement is not a written warranty under the MMWA. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2012 WL 1015806, at *3 (N.D. Ill. Mar. 22, 2012) ("'Made in the USA' is not a representation that satisfies" the MMWA; it is not an "affirmance of a specified level of performance and a specified period of time").

Plaintiff also failed to provide a reasonable opportunity to cure. *See* 15 U.S.C. § 2310(e) (defendant must be "afforded a reasonable opportunity to cure" a failure to comply with a warranty). As shown, Plaintiff failed to give pre-suit notice, and thus also failed to provide a

10

"reasonable opportunity to cure." *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2012 WL 1015806, at *5.[4]

**E.     The Breach of Contract Claim Fails (Count 3).**

Plaintiff's contract claim fails for at least two reasons. First, as shown, Plaintiff does not allege she contracted with Reynolds. Plaintiff alleges she bought Reynolds Wrap "on one or more occasions … at Walmart," and thus she has not alleged she contracted with Reynolds. *See, e.g.*, *DUAP AG v. United Exposition Serv. Co.*, 1988 WL 40858, at *7 (N.D. Ill. Apr. 19, 1988) (breach of contract claim failed where plaintiff was not in privity of contract with defendant).

Second, the contract claim fails because it is displaced by the UCC. "Whenever a provision of the UCC applies to the parties' claims, then the UCC displaces common law claims." *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *8 (N.D. Ill. Sept. 30, 2019) (dismissing contract claim when plaintiffs also asserted warranty claims governed by the UCC); *see Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, 829 F. Supp. 2d 636, 645 (N.D. Ill. 2011) (the UCC displaces the common law whenever a provision of the UCC governs the dispute); *see also* 810 ILCS 5/1-103(b) (if a particular provision of the UCC governs an issue, it will displace the common law). The UCC governs the sale of a product like Reynolds Wrap (*Fullerton*, 2019 WL 4750039, at *8 ("the UCC expressly governs the sale of goods"); 810 ILCS 5/2-102), and thus Plaintiff cannot assert a common law contract claim.

---

[4] Plaintiff's MMWA claim also fails if she purports to bring it as a class claim. The MMWA requires 100 plaintiffs. "No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3); *see Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (no federal court jurisdiction under CAFA for MMWA claim where claimant failed to name 100 plaintiffs because "CAFA may not be used to evade or override the MMWA's specific numerosity requirement").

11

**F. The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim (Count 7).**

In Illinois, the economic loss doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019). Plaintiff alleges she was injured because she supposedly "would not have purchased the Product or paid as much if the true facts had been known …." (Compl., ¶ 101.) Thus, Plaintiff is alleging *economic* injury, and her negligent misrepresentation claim fails. *See Chiappetta*, 2022 WL 602505, at *7–8 (barring negligent misrepresentation claim when plaintiff claimed she "would not have purchased the Product or paid as much" had they known the truth); *Rudy*, 2022 WL 345081, at *8 (dismissing negligent misrepresentation claim under the economic loss doctrine); *Kinman v. The Kroger Co.*, 2022 WL 1720589, at *4 (N.D. Ill. May 27, 2022) (same); *Cerretti*, 2022 WL 1062793, at *5 (same).

**G. The Fraud Claim Fails Because Plaintiff Does Not Allege Scienter (Count 8).**

"To state a claim for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Chiappetta*, 2022 WL 602505, at *8 (quotations omitted). "*Scienter*, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Id.*

Plaintiff alleges that Reynolds's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 105.) Four recent decisions have held that similar allegations do not satisfy Rule 9(b). In *Chiappetta*, for example, the court dismissed a fraud claim when plaintiff alleged that Kellogg misled consumers through the labeling of its strawberry toaster pastries. *See* 2022 WL 602505, at *8. Like Plaintiff does here, the *Chiappetta* plaintiff alleged that defendant's "fraudulent intent is evinced by its failure to

accurately identify the Product on the front label, when it knew its statements were neither true nor accurate." *Id.* The court held that this allegation was conclusory and dismissed. *Id.*; *see also Rudy*, 2022 WL 345081, at *9 (dismissing fraud claim when plaintiff alleged intent "is evinced by its knowledge that the Product was not consistent with its representations."); *Kinman*, 2022 WL 1720589, at *7 (same); *Reinitz v. Kellogg Sales Co.*, 2022 U.S. Dist. LEXIS 98580, at *16 (C.D. Ill. June 2, 2022) (same). Plaintiff's fraud claim should be dismissed for the same reason. *See also Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021).

**H.     Plaintiff's Unjust Enrichment Claim Duplicates Her Other Claims and Thus Fails for the Same Reasons (Count 9).**

Plaintiff's unjust enrichment claim, which is based on the same conduct as her other claims (Compl., ¶ 106), "stands or falls" with those claims. *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Plaintiff's other claims fail, and thus the unjust enrichment claim fails as well. *See Sabo I*, 250 F. Supp. 3d at 337 (dismissing unjust enrichment claim when ICFA claim dismissed for failure to allege actual damages).

**I.     Plaintiff Lacks Standing to Seek Injunctive Relief.**

Plaintiff seeks "preliminary and permanent injunctive relief by directing [Reynolds] to correct the challenged practices to comply with the law." (Compl., Prayer at ¶¶ 2, 3.) But she lacks standing to seek this relief. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Chiappetta*, 2022 WL 602505, at *10 (quotations

omitted). A plaintiff is not entitled to pursue injunctive relief who is aware of the allegedly deceptive conduct and is not likely to be harmed in the future. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014).

Plaintiff is now aware of the allegedly deceptive conduct and alleges that she will not purchase the Reynolds Wrap until she has the "assurance the Product's representations are consistent with its abilities, attributes, and/or composition." (Compl., ¶ 55). Thus, Plaintiff cannot show any imminent or substantial future injury and cannot seek injunctive relief. *See Camasta*, 761 F.3d at 741 (plaintiff not entitled to injunctive relief because "[s]ince Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."); *Chiappetta*, 2022 WL 602505, at *10 ("Chiappetta knows that the Product's filling contains apples and pears in addition to strawberries; therefore, she is unlikely to be harmed by Kellogg's Product packaging in the future."); *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1087 (N.D. Ill. 2018) (dismissing plaintiff's claim for injunctive relief where plaintiff was aware that the pita chips at issue were not "All Natural," and thus, was unlikely to be harmed by the alleged deception in the future).

## CONCLUSION

Plaintiff's claims all have fatal defects and should be dismissed. She fails to plausibly allege damages to support her ICFA claim, and the claim is nothing more than a rehash of her contract claim. She lacks standing to assert claims under other states' consumer protection laws. Plaintiff failed to provide pre-suit notice, which bars her warranty claims, and those claims also fail for lack of privity. Plaintiff fails to allege the required elements for her remaining common law claims for breach of contract, fraud, negligent misrepresentation, and unjust enrichment. And

she lacks standing to seek injunctive relief as she is aware of the alleged deception and there is no likelihood she will be harmed in the future. The Complaint should be dismissed with prejudice.

Dated: June 10, 2022    **REYNOLDS CONSUMER PRODUCTS, LLC**

By: */s/ Jonathan H. Claydon*
       One of Its Attorneys

Jonathan H. Claydon
David S. Repking
Brian C. Miller
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
T: (312) 456-8400
F: (312) 456-8435
claydonj@gtlaw.com
repkingd@gtlaw.com
millerb@gtlaw.com

15

## **CERTIFICATE OF SERVICE**

      I, David S. Repking, an attorney, certify that I electronically filed Defendant Reynolds Consumer Products, LLC's Memorandum of Law in Support of its Motion to Dismiss the Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on June 10, 2022.

                                                    */s/ David S. Repking*
                                                    Attorney for Defendant
                                                    Reynolds Consumer Products, LLC