IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Veronica Shirley, individually )
and on behalf of all others )
similarly situated )
)
        Plaintiff, )
)
    v. )  No. 22 C 278
)
)
Reynolds Consumer Products, )
LLC, )
)
        Defendant. )

## Memorandum Opinion & Order

In this action, plaintiff Veronica Shirley alleges on behalf of herself and putative Illinois and multistate classes that Reynolds Consumer Products violates the consumer protection statutes and common law of Illinois and eleven other states by labeling its aluminum foil "Made in USA" when, in fact, the primary raw material used to make the product—bauxite—is imported from abroad. Plaintiff alleges that Reynolds sells its aluminum foil at "a price premium compared to other similar products, for no less than $4.99 per 75 square feet, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions." Compl. at ¶ 27. According to the complaint, Reynolds intended to deceive consumers who, like plaintiff, are willing to pay a premium for American-made products,

and that plaintiff and the classes were misled into doing so by the "Made in USA" label. Plaintiff also alleges that she and the classes "would not have bought the product or would have paid less for it" had they "known the truth." *Id.* at ¶ 26.

Plaintiff asserts violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and unidentified consumer protection statutes of Iowa, New Hampshire, New Mexico, Georgia, Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia, and Oklahoma, which plaintiff claims are similar to the ICFA. She also asserts claims for breach of contract, breach of express warranty, breach of the implied warranty of merchantability, and violation of the Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301. Finally, plaintiff claims negligent misrepresentation, fraud, and unjust enrichment under the common law of the foregoing states. Reynolds moves to dismiss the complaint in its entirety, asserting myriad flaws in plaintiff's various claims, and moves in the alternative to transfer the case to the Western District of Arkansas. For the reasons that follow, the motion to dismiss is granted in part, and the motion to transfer is denied.

I.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, not the merits of a case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). In resolving such motions, I "construe the complaint

2

in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

To survive a motion to dismiss, a complaint must assert sufficient factual content to make relief plausible, rather than merely conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). The federal notice-pleading standards of Rule 8 require a plaintiff to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Claims sounding in fraud—which include claims alleging deceptive conduct under ICFA—are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 736 (7th Cir. 2014).

The federal change of venue statute, 28 U.S.C. § 1404, authorizes transfer of an action "[f]or the convenience of the parties and witnesses, in the interest of justice," if the case could have been brought originally in the transferee venue. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 977 (7th Cir. 2010). To determine whether transfer is appropriate, courts consider the statutory factors and assess convenience and fairness on an individualized, case-by-case basis. *Coffey v. Van*

3

*Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citations omitted).

## II.

Defendant's first argument for dismissal targets plaintiff's ICFA claim. The ICFA protects "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (cleaned up). To state a claim under the statute, a plaintiff must show: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta*, 761 F.3d at 739 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). Defendant argues that plaintiff's ICFA claim fails because her damages allegations are speculative and because her claim is duplicative of her warranty claims. Neither argument warrants dismissal.

A private action under the ICFA requires a plaintiff to plead and prove that defendant's violation of the statute caused her actual damages, which is to say, "actual pecuniary loss." *Id.* (citing *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (2008), and *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). Many courts in this district have found damages allegations such as

4

plaintiff's sufficient to satisfy this standard. *See*, e.g., *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160-61 (N.D. Ill. 2022) (citing *Terrazzino v. Wal-Mart Stores, Inc.,* 335 F. Supp. 3d 1074, 1085 (N.D. Ill. 2018) (allegations that the plaintiff "paid more for the Pita Chips because they were labeled as 'All Natural,' and further that she would not have bought the Pita Chips if she had known that they were not, in fact, 'All Natural,'" sufficient to allege actual damages); *McDonnell v. Nature's Way Prods.*, LLC, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (allegations that the plaintiff "paid more for the products than they were actually worth" and "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins" sufficient); *Muir v. Playtex Prods.*, LLC, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (allegations that the plaintiff "was deprived of the benefit of the bargain because the Diaper Genie II Elite product was actually worth less than what it would have been worth had it actually been proven superior in odor control to its competitors" adequately pled actual damages element of ICFA claim)). *See also Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 709 (N.D. Ill. 2020) (*citing, inter alia, Hobbs v. Gerber Prods. Co.*, 17 C 3534, 2018 WL 3861571, at *9 (N.D. Ill. Aug. 14, 2018) ("[T]he Court reads the complaint to claim that Hobbs did not receive the benefit of the bargain – that she did not receive what she thought she was

paying for – and that suffices as a claim of actual pecuniary loss."), and *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at \*9 (N.D. Ill. Aug. 18, 2017) (allegations that the plaintiff received goods that were "worth less than was promised" sufficient to plead actual damages)).

It is true that in *Sabo v. Wellpet*, a case similarly involving allegations of deceptive "Made in the USA" labeling, I held that to raise a plausible inference of actual damages, the plaintiff was required to ground his allegations in something more than "his subjective estimation of the products' worth." 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017). I concluded that the plaintiff's first amended complaint was too speculative to suggest actual damages, noting that he did not claim to have "paid more for defendant's pet food products because he believed they were American-made," did not assert that the defendant "charged more for its pet food products because they were (supposedly) 'Made in the USA,'" and did not allege that "comparable pet food products that lacked domestic-source designations were less expensive." *Id*. Although the plaintiff attempted to cure these deficiencies by amending his complaint, adding, *inter alia*, an allegation that absent the deceptive labeling, he "would not have purchased the dog food at the price he paid," 282 F. Supp. 3d 1040, 1042 (N.D. Ill. Oct. 10, 2017), I held the amendments insufficient to raise his damages claim above a speculative level. I noted that although the

plaintiff and the absent class members presumably had dogs they needed to feed in any event, the complaint said nothing about alternative products they would have bought instead of the defendant's dog food or how those products compared to the defendant's price-wise. *Id.* Here, by contrast, plaintiffs allege that they would not have purchased defendant's product at all had they known "the truth" (and there is no obvious reason, such as pets to feed, to presume that they would have had to purchase some alternative), and they further suggest that "other similar products" were available for sale at lower prices. Compl. at ¶ 27. While the differences between these allegations and those in *Sabo* are nuanced, they are sufficient to nudge plaintiff's claims "across the line from conceivable to plausible." *Iqbal*, at 683 (quoting *Twombly*, 550 U.S., at 570).

Defendant's second argument against plaintiff's ICFA claim—that it should be dismissed as duplicative of her warranty claims—has been rejected by a number of courts where, as here, the plaintiff alleges fraudulent conduct that goes beyond the breach of a promise. *See, e.g., Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *6 (N.D. Ill. July 12, 2021) (declining to dismiss ICFA claim alleging "affirmative acts of misrepresentation" as duplicative of contract claims); *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) ("affirmative acts of misrepresentation" may

fall outside "the routine breaches of contract not covered by ICFA"); *Miles v. Am. Honda Motor Co.*, No. 17 C 4423, 2017 WL 4742193, at *4 (N.D. Ill. Oct. 19, 2017) (declining to dismiss ICFA claim as duplicative where the "plaintiffs allege more than a breach of an express warranty"). The allegations in this case fit this pattern, so dismissal of plaintiff's ICFA claim as duplicative of her warranty claims is inappropriate.

At all events, defendant need not be concerned about the possibility of duplicative claims because plaintiff's warranty claims do not survive dismissal.[1] Illinois law requires a plaintiff to provide defendant pre-suit notice of any breach of warranty claims—a requirement plaintiff acknowledges she did not satisfy. *See Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 384 (7th Cir. 2003) (observing that the Supreme Court of Illinois interprets 810 ILCS 5/2-607(3)(a) to "require[] a plaintiff to notify the defendant of the claimed deficiency in its product prior to filing suit.") (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996)). Plaintiff's argument that she was not required to give defendant "direct notice" of her claims because defendant had actual knowledge of the facts giving rise to those claims has been rejected by numerous courts, *see*, e.g., *Jacobs v. Whole Foods Mkt. Grp., Inc.*, --- F.Supp.3d ---, 2022 WL 3369273, at *3 (N.D.

---

[1] Plaintiff does not object to dismissal of her implied warranty claim. *See* Resp., ECF 30 at 1 n. 2.

Ill. Aug. 16, 2022) (Bucklo, J.); *Kinman v. Kroger Co.*, ---
F.Supp.3d ---, 2022 WL 1720589, at *3 (N.D. Ill. May 27, 2022);
*Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1162 (N.D.
Ill. 2022), and I discern no reason to depart from those rulings.
Plaintiff's claim under the Magnuson-Moss Act fails for the same
reason. *See Bakopoulos,* 2022 WL 846603, at *2 (Magnuson-Moss Act
"incorporates state-law notice requirements").

Defendant next argues that plaintiff lacks standing to pursue
claims on behalf of unnamed class members whose claims arise under
the laws of states where plaintiff does not claim to have been
injured. It is true that some courts have found this argument
persuasive. *See*, e.g., *In re Dairy Farmers of Am., Inc. Cheese
Antitrust Litig.*, 2015 WL 3988488, at *25-*28 (N.D. Ill. June 29,
2015); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5-6
(N.D. Ill. Feb. 26, 2019). In my view, however, the better course
on the allegations here is to defer the issue to the class
certification stage, as a number of other courts have done. *See*,
e.g., *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D.
Ill. 2021) (declining to dismiss multi-state class claims on
standing grounds, noting that "[w]hat MAM is really challenging is
whether Freeman (or, actually, any Illinois resident who bought
pacifiers only in Illinois) can satisfy the Civil Rule 23 class-
certification requirements as applied to a nationwide and multi-
state class); *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL

3895565, at *7 (N.D. Ill. Sep. 6, 2017) (named plaintiff's ability to bring claims under the laws of other states is an issue "better addressed at class certification") (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011)); *Halperin v. Int'l Web Servs.*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (concluding that challenge to non-Illinois class claims was really based on Rule 23, not Article III). *See also McDonnell v. Nature's Way Prods.*, LLC, No. 16 C 5011, 2017 WL 1149336, at *5 (N.D. Ill. Mar. 28, 2017) (collecting cases reflecting split of authority and concluding that deferral to class certification stage was the better approach).

Nor am I persuaded, at this stage, that plaintiff is precluded from pursuing injunctive relief. It is true, as defendant observes, "[i]n a consumer fraud case, an individual plaintiff's claim for injunctive relief is ordinarily moot because she has already discovered the defendant's fraud and is therefore unlikely to be deceived again." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 706 (N.D. Ill. 2020) (citing *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017)), *aff'd*, 37 F. 4th 1326 (7th Cir. 2022). But as the *Mullen* court went on to explain, "when that plaintiff represents class members who may later discover the defendants' fraud, her claim is 'capable of repetition,' and she may pursue her claim for injunctive relief despite loss of her personal stake." *Id.* (concluding that named plaintiff had standing to pursue

injunctive relief on behalf of individuals who had paid for the defendants' services and "may not yet have discovered" that they fell short of the defendants' representations) (citing *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017)). *See also Wacker Drive Exec. Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP,* No. 18-CV-5492, 2019 WL 2270000, at *4 (N.D. Ill. May 28, 2019); (deferring issue of the plaintiff's standing to pursue injunctive relief because the plaintiff had "a damages claim that otherwise supports an injury-in-fact and class treatment remains a possibility"); *Block v. Lifeway Foods, Inc*., No. 17 C 1717, 2017 WL 3895565, at *7 (N.D. Ill. Sep. 6, 2017) (declining to rule on "whether Block has standing to pursue injunctive relief until the parties have briefed the issue of class certification.").

This approach is consistent with one I have taken in other cases, *see*, e.g., *Leiner v. Johnson & Johnson Consumer Companies, Inc*., 215 F. Supp. 3d 670, 673 (N.D. Ill. 2016) (declining to dismiss injunctive claim on standing grounds), and I am not persuaded to depart from it on the allegations here. Plaintiff alleges that she would not have purchased the product at the price she paid had she known the truth about the origin of its raw materials, but that she "intends to, seeks to, and will" purchase the product again if she can rely on its labeling.[2] These

---

[2] Although her allegations in this respect are not entirely clear, I take them to mean that she would either purchase the product at

11

allegations differentiate her claims from those the court considered in *In re Herbal Supplements Mktg. & Sales Pracs.* Litig., No. 15-CV-5070, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017), for example, where the court dismissed the plaintiffs' claims for injunctive relief on standing grounds, reasoning that because the plaintiffs "[made] clear in their complaint that they would not have purchased the Affected Products had they known the truth about them"—indeed, they claimed to have discovered that the products contained "adulterants," *id.*, at *2—they "face[d] no real immediate threat of future injury." *Curran*, 2019 WL 398685, at *5 (noting that *Herbal Supplements* involved a product that was "not only mislabeled but also flawed or defective, so it was implausible that the plaintiffs were likely to purchase them again."). Plaintiff, by contrast, does not claim that defendant's product was defective but only that it was priced in accordance with characteristics it purported to have but did not. I am not convinced, at this stage, that plaintiff is barred from pursuing injunctive relief.

---

the price she paid if defendant switched to domestically produced raw materials (in which case its current labeling would be accurate), or that she would purchase the product at a price lower than she paid if it did not bear the label "Made in U.S.A." In either alternative scenario, she would presumably receive the benefit of the bargain she claims not to have received here.

This leaves only defendant's arguments for dismissal of plaintiff's claims for common law fraud and unjust enrichment.[3] Defendant insists that the first of these fails because plaintiff has not adequately pled scienter, but "Rule 9(b) does not require a complaint to allege intent with particularity, even in fraud claims." *Geske*, 503 F. Supp. 3d at 707–08. What a plaintiff must allege with particularity are the "*circumstances* constituting fraud," while "intent....may be alleged generally." *Id.*, citing Fed. R. Civ. P. 9(b) (emphasis added). Plaintiff has done that, alleging that defendant is aware that consumers are willing to pay more for products made in the United States and that it sought to capitalize on that tendency by placing a conspicuous "Made in U.S.A." label on the product packaging despite knowing that the product was made with foreign-sourced material. That is sufficient to infer that defendant "acted with the intent to deceive." *Ulrich* 2017 WL 3581183, at *8.

Finally, both parties limit their discussion of plaintiff's unjust enrichment claim to the argument that this claim stands or fails with the remaining claims. Because several of plaintiff's claims survive dismissal, her unjust enrichment claim may also proceed.

---

[3] Plaintiff does not oppose dismissal of her breach of contract claim or her claim for negligent misrepresentation.

Turning briefly to defendant's motion for change of venue, I conclude that transfer is unwarranted. There is no dispute that plaintiff could have brought her claim in the Western District of Arkansas, so I begin with the issue of convenience. Five factors guide my analysis: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, 317 F. Supp. 3d 1006, 1011 (N.D. Ill. 2018) (citation omitted). Plaintiff is an Illinois resident who claims to have bought defendant's product in this district, and this is the forum she chose. Defendant itself is headquartered in Illinois. Defendant's argument for transfer to the Western District of Arkansas centers around its assertion that the challenged product at is made at a facility in Arkansas; but even assuming the truth of that assertion, the location of defendant's manufacturing facility has little to do with the issues in this case, which center around defendant's corporate knowledge of decisions concerning product labeling. Indeed, there is no dispute that defendant processes the product in the United States. *See* Compl. at ¶ 21. On these facts, the first, second, and fifth factors do not militate in favor of transfer. As for the third, I am not persuaded that in the age of electronic record keeping and discovery, "sources of proof"

14

relevant to the issues are more easily accessed from Arkansas than from Illinois, making this factor either neutral or of negligible significance. Finally, even assuming that defendant expects to present testimony from witnesses located in Arkansas, and that venue there is more convenient for them, that factor alone is not enough to tip the balance in defendant's favor. *See In re Nat'l Presto Indus., Inc*., 347 F.3d 662, 664 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (citations omitted).

III.

For the foregoing reasons, defendant's motion to dismiss is granted as to plaintiff's claims for breach of contract, breach of express or implied warranties, violation of the Magnuson-Moss Act, and negligent misrepresentation. The motion is otherwise denied. The motion for change of venue is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: October 21, 2022

15